OPINION
{¶ 1} Appellant, Gary C. Rigdon, appeals the judgment of the Warren County Court of Common Pleas convicting him of two counts of felonious assault and sentencing him to an aggregate of six years in prison. We affirm the trial court's judgment.
 {¶ 2} On January 3, 2006, appellant was indicted on two counts of felonious assault pursuant to R.C. 2903.11(A)(1) and (2), with firearm specifications pursuant to R.C. 2941.145(A). The charges were filed following an altercation on November 28, 2005, *Page 2 
involving appellant, his wife, Shari Rigdon (Mrs. Rigdon), Mrs. Rigdon's ex-husband, Greg Little (Little), and an acquaintance, Greg Kelly (Kelly).
 {¶ 3} On the evening in question, appellant and Mrs. Rigdon got into an argument while dining at a restaurant. After the argument became heated, appellant left the restaurant while Mrs. Rigdon stayed behind, indicating she would find her own way home. Little and Kelly were also at the restaurant that evening and witnessed the argument between appellant and Mrs. Rigdon. After appellant left, and noticing Mrs. Rigdon appeared upset, the two men joined Mrs. Rigdon for drinks and offered to drive her home.
 {¶ 4} At some point that evening while Mrs. Rigdon was briefly away from the table, Kelly answered a call from appellant on Mrs. Rigdon's cellular telephone. He and appellant began to argue heatedly, during which Kelly allegedly made threatening remarks to appellant. Following this conversation, appellant contacted his son, Adam, and asked for a shotgun. Appellant also contacted his son, William, along with his nephew, Daniel, requesting they come to the residence.
 {¶ 5} Later that evening after leaving the restaurant, Kelly, Little and Mrs. Rigdon drove to Kelly's house for another drink before continuing on to Mrs. Rigdon's house. When they arrived at her house, Mrs. Rigdon unsuccessfully attempted to enter the residence through the garage door, which appellant had disabled. She and Kelly then walked to the front entrance of the house where Mrs. Rigdon began to knock on the front door. Because the Rigdons had a civil protection order in place against Little at the time, Little remained in the car while Mrs. Rigdon and Kelly approached the residence.
 {¶ 6} Appellant's son, William, responded to the knock on the door but refused to allow Mrs. Rigdon inside. He then went to get appellant, who picked up the loaded shotgun he had obtained earlier that evening, and opened the door. Upon opening the door, an argument ensued between appellant and Mrs. Rigdon. At some point during the argument, *Page 3 
appellant "racked" the shotgun in an effort to scare Kelly.[1]
Appellant then struck Kelly in the face with the shotgun, and Kelly stumbled backward on the porch as a result. Appellant's nephew, Daniel, proceeded towards Kelly and began fighting him. Little, who was still in the car parked in front of the Rigdons' residence at the time, observed Kelly engaged in the fight and decided to assist him.
 {¶ 7} As he approached Kelly, Little first encountered Daniel, who pushed him to the ground. Appellant, armed with the shotgun, then began to move towards Little as Little was attempting to get off the ground. At some point as appellant approached Little, the shotgun discharged and struck Little in the back of his shoulder. Appellant re-racked the gun after the shot was fired. He then proceeded towards Kelly and joined in the fight with him. After the fight had ended, Mrs. Rigdon gathered Little and Kelly and began to drive them to the hospital. Police stopped the vehicle shortly thereafter, and emergency technicians transported Little, Kelly and Mrs. Rigdon to the hospital.
 {¶ 8} A jury trial was held on May 8 and 9, 2006, during which appellant testified the shooting was accidental, and that the shotgun discharged as a result of hitting the ground when he slipped on a patch of mud in his front yard. After hearing this testimony, as well as that of several other witnesses and investigating officers, the jury returned a guilty verdict as to both counts of felonious assault. At sentencing, the trial court merged the second felonious assault count and gun specification with the first as allied offenses of similar import.[2]
The court then sentenced appellant to three years in prison on one felonious assault count and three years in prison on one firearm specification.
 {¶ 9} Appellant now appeals his conviction and sentence, raising six assignments of *Page 4 
error.
 {¶ 10} Assignment of Error No. 1:
 {¶ 11} "THE TRIAL COURT ERRED IN PERMITTING TESTIMONY IN EVIDENCE REGARDING THE GUN WITHOUT SHOWING A CHAIN OF CUSTODY."
 {¶ 12} Appellant first argues the trial court erred in admitting evidence of the shotgun where the state failed to provide evidence establishing a chain of custody. Specifically, appellant alleges the state failed to establish a chain of custody by failing to call crime lab technicians to testify at trial regarding tests performed on the subject gun. We find this argument without merit.
 {¶ 13} As an initial matter, we find nothing in the record demonstrating appellant raised any objection concerning evidence of the firearm recovered from appellant's residence at trial. Accordingly, in raising this issue for the first time on appeal, appellant has waived all but plain error. See State v. Awan (1986), 22 Ohio St.3d 120, 122;State v. Wheary (Nov. 4, 1999), Cuyahoga App. No. 75021, at *3. An alleged error does not constitute plain error unless, but for the error, the outcome of the trial clearly would have been otherwise. State v.Baldev, Butler App. No. CA2004-05-106, 2005-Ohio-2369, ¶ 23. We find appellant has failed to demonstrate the trial court committed plain error in admitting evidence of the subject firearm at trial.
 {¶ 14} The chain of custody is part of the authentication and identification requirement for the admission of evidence, set forth in Evid.R. 901. State v. Brown (1995), 107 Ohio App.3d 194, 200. Although the state bears the burden of establishing a chain of custody, its duty is not absolute. State v. Moore (1973), 47 Ohio App.2d 181, 183. The state need not negate all possibilities of tampering or substitution, but rather, "establish that it is reasonably certain that substitution, alteration, or tampering did not occur." State v. Blevins (1987),36 Ohio App.3d 147, 150; Brown. Significantly, any deficiencies in the chain of custody of *Page 5 
evidence affect the weight of such evidence rather than its admissibility. State v. Franklin, 97 Ohio St.3d 1, 2002-Ohio-5304, ¶ 43.
 {¶ 15} Here, Officer White testified at trial regarding his investigation of the altercation. He testified he collected various evidence from the scene, including the shotgun appellant used during the altercation. Officer White specifically stated he collected the gun from the kitchen table after appellant directed him to it and indicated it was the weapon that was fired during the altercation. Moreover, he testified that upon locating the gun, he secured it in a box with plastic ties, sealed the edges of the box with evidence tape, marked the box and placed it in an evidence room until it was sent to the crime lab for analysis. Officer White identified the firearm introduced into evidence at trial as the same weapon he collected from the crime scene on the night in question. He further indicated it was in the same condition, except for dirt having been removed and the presence of residual black fingerprinting powder.
 {¶ 16} Despite appellant's argument to the contrary, the fact the state failed to call crime lab personnel at trial to testify as to the tests performed on the gun does not affect our analysis. The operability of the gun was not in question at trial, as appellant himself admitted having discharged the gun during the altercation and thereafter telling Little, "I shot you." Further, numerous witnesses testified as to hearing the sound of the gun as it was fired, and Little's physician testified regarding the nature of Little's wound as resulting form a gunshot. Accordingly, we find sufficient evidence was presented at trial to establish the chain of custody of the gun, along with its operability. Any remaining questions concerning the tests crime lab personnel performed on the gun were questions affecting the weight to be given the evidence rather than its admissibility.
 {¶ 17} Based upon the foregoing, we find no error in the trial court's decision to admit evidence concerning the subject shotgun at trial. Appellant's first assignment of error is *Page 6 
therefore overruled.
 {¶ 18} Assignment of Error No. 2:
 {¶ 19} "THE TRIAL COURT ERRED WHEN IT DENIED APPELLANT'S MOTION FOR ACQUITTAL."
 {¶ 20} In his second assignment of error, appellant argues the trial court erred in denying his Crim.R. 29 motion for acquittal at the close of the state's case because the state failed to prove the operability of the subject firearm. We disagree.
 {¶ 21} A court shall not enter judgment of acquittal pursuant to Crim.R. 29 if the evidence is such that reasonable minds can reach different conclusions as to whether each material element of a crime has been proven beyond a reasonable doubt. State v. Bridgeman (1978),55 Ohio St.2d 261, syllabus. In reviewing the sufficiency of the evidence to support a criminal conviction, the reviewing court is "to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d 89, 113,1997-Ohio-355. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
 {¶ 22} Appellant argues the state failed to demonstrate the subject firearm was operable on the night of the incident to support the alleged gun specification pursuant to R.C. 2941.145(A).[3] Under R.C.2923.11(B), "firearm" is defined as "any deadly weapon capable *Page 7 
of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant. `Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable." The Ohio Supreme Court has held that "[a] firearm enhancement specification can be proven beyond a reasonable doubt by circumstantial evidence. In determining whether an individual was in possession of a firearm and whether the firearm was operable or capable of being readily rendered operable at the time of the offense, the trier of fact may consider all relevant facts and circumstances surrounding the crime, which include any implicit threat made by the individual in control of the firearm." State v. Thompkins, 78 Ohio St.3d 380,1997-Ohio-52, paragraph one of the syllabus.
 {¶ 23} As stated, our review of the record indicates the operability of the firearm was not in dispute at trial. Appellant admitted the gun he was holding discharged during the altercation, that Little was shot as a result, and that he told Little, "I shot you," immediately thereafter. Numerous witnesses also testified as to hearing the sound of the gunshot, and Little's physician testified that metallic objects consistent with bullet fragments were found in Little's shoulder.
 {¶ 24} Accordingly, we find sufficient evidence was presented at trial to establish the operability of the subject firearm, and therefore, that the trial court properly denied appellant's Crim.R. 29 motion for acquittal. Appellant's second assignment of error is overruled.
 {¶ 25} Assignment of Error No. 3:
 {¶ 26} "THE JUDGMENTS OF CONVICTION ARE CONTRARY TO LAW IN THAT THERE WAS INSUFFICIENT EVIDENCE TO ESTABLISH EACH AND EVERY ELEMENT OF EACH OFFENSE WITH THE SPECIFICATIONS BEYOND A REASONABLE DOUBT." *Page 8 
 {¶ 27} Assignment of Error No. 4:
 {¶ 28} "APPELLANT'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE."
 {¶ 29} In his third assignment of error, appellant argues there was insufficient evidence presented at trial to prove the elements of "each offense with the specifications beyond a reasonable doubt." Appellant's argument in support of this assignment of error, however, focuses solely upon the state's alleged failure to demonstrate the firearm was "in working order at the time of the offense." In his fourth assignment of error, appellant argues his conviction is against the manifest weight of the evidence because there was no evidence presented to establish he knowingly caused harm to Little with the shotgun, and that the jury ignored the civil protection order appellant had against Little in reaching its verdict. We find these arguments without merit.
 {¶ 30} A review of the sufficiency of the evidence and a review of the manifest weight of the evidence are separate and legally distinct determinations. See State v. Thompkins, 78 Ohio St.3d at 386,1997-Ohio-52. Whereas the test for sufficiency requires a determination of "whether the state has met its burden of production at trial," a manifest weight challenge requires a determination of "whether the state has appropriately carried its burden of persuasion." Id. at 390 (Cook, J., concurring).
 {¶ 31} In reviewing whether sufficient evidence was presented at trial to sustain a conviction, a reviewing court must "examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." State v. Smith, 80 Ohio St.3d 89, 113, 1997-Ohio-355. After viewing the evidence in a light most favorable to the prosecution, the relevant inquiry is whether any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id. *Page 9 
 {¶ 32} In reviewing the manifest weight of the evidence to determine whether reversal is warranted, "the court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, at 387. "The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." Id.
 {¶ 33} An appellate court will not reverse a judgment as against the manifest weight of the evidence in a jury trial unless it unanimously disagrees with the jury's resolution of any conflicting testimony. Id. at 389. When reviewing the evidence, an appellate court must be mindful that the original trier of fact was in the best position to judge the credibility of witnesses and the weight to be given the evidence.State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
 {¶ 34} In this case, appellant challenges both the sufficiency of the evidence presented as to the elements of the offense in question, as well as the manifest weight of the evidence supporting his conviction. "Because sufficiency is required to take a case to the jury, a determination that a conviction is supported by the weight of the evidence must necessarily include a finding of sufficiency. Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency."State v. Roberts (Sept. 17, 1997), Loraine App. No. 96CA006462, at *2. (Emphasis sic).
 {¶ 35} Appellant was convicted of felonious assault pursuant to R.C.2903.11, with a gun specification pursuant to R.C. 2941.145(A).[4]
R.C. 2903.11 provides: "(A) No person shall knowingly do either of the following: (1) Cause serious physical harm to another or to *Page 10 
another's unborn; (2) Cause or attempt to cause physical harm to another or to another's unborn by means of a deadly weapon or dangerous ordnance." Under R.C. 2901.22(B), "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature. A person has knowledge of circumstances when he is aware that such circumstances probably exist."
 {¶ 36} As an initial matter, and as previously stated in our analysis concerning appellant's first and second assignments of error, the record indicates the operability of the subject firearm at the time of the incident was not in dispute at trial. Several witnesses, including appellant himself, testified the shotgun discharged on the evening in question and that Little was struck as a result. Appellant also testified as to the working condition of the gun, stating that he had used the shotgun less than one month prior to the incident to "shoot pumpkins."
 {¶ 37} Further, although appellant argues there was no evidence presented at trial demonstrating he "pointed a gun or aimed a gun at anyone," and therefore, no evidence demonstrating he knowingly caused physical harm to Little with the gun, appellant testified at trial that he consciously obtained the shotgun from his son to protect himself and knew the gun was loaded at the time he obtained it. Appellant further testified he consciously racked the shotgun upon opening the front door and seeing Kelly standing beside Mrs. Rigdon, and that he did so intending to "scare" Kelly. The evidence indicates that appellant proceeded to walk outside of the residence to the front yard with the shotgun in hand as his son and nephew pursued Kelly. When Little emerged from the car to assist Kelly, appellant testified he approached Little holding the shotgun, that the gun discharged and struck Little, and that he told Little, "I shot you," immediately thereafter. Significantly, appellant admitted he was not afraid of Little, and that Little neither threatened him nor made any move to injure him at any time during the altercation. *Page 11 
 {¶ 38} Despite appellant's testimony that the gun accidentally fired by striking the ground when he slipped on mud, appellant also testified he re-racked the shotgun after it was fired, and proceeded to engage in a fight with Kelly after Little had been shot. Further, appellant's neighbor testified that after hearing the sound of gunfire, he looked out his window and observed a number of young men struggling with appellant over the shotgun, which appellant appeared to be attempting to bring down to bear. When police arrived, appellant stated he knew he was "going to jail" and made no mention that the incident was an accident. In fact, the evidence presented at trial indicates appellant displayed no concern for Little following the incident, even after Little was taken to the hospital. Little's physician testified at trial that Little sustained a serious physical injury resulting from the gunshot.
 {¶ 39} The jury, as the trier of fact, was free to assess appellant's credibility in light of this evidence in reaching its conclusion that appellant acted knowingly on the night in question. We note the fact a civil protection order was in place prohibiting Little from having contact with appellant is of no consequence to our analysis. As stated, appellant testified Little never spoke to him, threatened him or made any move to injure him during the altercation, and further testified he was not afraid of Little. Again, the jury was free to assess the credibility of the witnesses and to weigh the evidence in determining whether the state established the elements of the offense in question beyond a reasonable doubt.
 {¶ 40} After a careful review of the record, we find sufficient evidence was presented at trial for the jury to find the elements of the felonious assault offense and gun specification were proven beyond a reasonable doubt, and that the jury's conclusion was supported by the manifest weight of the evidence. Accordingly, appellant's third and fourth assignments of error are overruled.
 {¶ 41} Assignment of Error No. 5:
 {¶ 42} "APPELLANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL." *Page 12 
 {¶ 43} In his fifth assignment of error, appellant argues his trial counsel was ineffective in the following four respects: failing to request a lesser-included offense instruction on aggravated assault, failing to address inconsistencies in the police report during his cross-examination of Little and Kelly, failing to raise self-defense at trial and failing to object to evidence concerning the operability of the shotgun. We find these arguments without merit.
 {¶ 44} To support a claim of ineffective assistance of counsel, appellant must demonstrate counsel's representation was deficient and appellant was prejudiced as a result. Strickland v. Washington (1984),466 U.S. 668, 687-88, 693, 104 S.Ct. 2052; State v. Bradley (1989),42 Ohio St.3d 136, 142. To warrant reversal, appellant must first show his counsel's performance "fell below an objective standard of reasonableness." Id. at 688. Appellant must then demonstrate "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694.
 {¶ 45} There is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," and as a result, "judicial scrutiny of counsel's performance must be highly deferential." Id. at 689. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." Id. at 691. Moreover, a court should "refrain from second-guessing strategic decisions counsel makes at trial, even when counsel's trial strategy was questionable." State v. Jackson, 107 Ohio St.3d 300, 2006-Ohio-1, ¶ 138.
 {¶ 46} With respect to appellant's argument regarding trial counsel's failure to request a lesser-included offense instruction on aggravated assault, we find this decision was part of counsel's trial strategy and proper in light of appellant's defense of accidental shooting presented at trial. The defense of accident is a complete defense. See State v.Smith, *Page 13 
Montgomery App. No. 21004, 2006-Ohio-4405, ¶ 24. "Ordinarily, when a defendant presents a complete defense as to the substantive elements of the crime * * * an instruction on a lesser-included offense is improper." See State v. Bethel, 110 Ohio St.3d 416, 2006-Ohio-4853, ¶ 137. A defendant is entitled to the lesser-included offense instruction only if, "due to some ambiguity in the state's version of the events involved in a case the jury could have a reasonable doubt regarding the presence of an element required to prove the greater but not the lesser offense." Id. at ¶ 138.
 {¶ 47} Here, an instruction on aggravated assault would have required the jury to find appellant was provoked on the evening in question.[5]
There was no evidence presented at trial, however, to support such a finding. In fact, appellant testified at trial that the shooting was an accident and that Little neither threatened him nor made any move to injure him at any time during the altercation. Accordingly, the evidence did not support a lesser-included offense instruction, and requesting such an instruction would have contradicted counsel's defense theory that the shooting was accidental. Similarly, we find counsel's decision not to raise the theory of self-defense was reasonable trial strategy where appellant's defense centered upon the argument of accident, as the theories of self-defense and accident are inconsistent. See, e.g.,State v. Talley, Cuyahoga App. No. 87143, 2006-Ohio-5322, ¶ 45.[6]
 {¶ 48} With respect to appellant's argument concerning counsel's failure to address inconsistencies in the police report, and specifically, in the statements of Kelly and Little, the record indicates the trial court reviewed the statements in question and determined there *Page 14 
were inconsistencies. The court then inquired whether defense counsel had the statements and was able to impeach the witnesses with the same. Appellant's trial counsel responded affirmatively. There is no indication in the record, however, as to what the inconsistencies were or whether appellant's trial counsel addressed them on cross-examination. Nevertheless, our review of the record demonstrates counsel fully cross-examined Little and Kelly regarding the events of the night in question. As such, we find no deficiencies in counsel's performance in this regard.
 {¶ 49} Moreover, our review of the record fails to demonstrate deficiencies in counsel's performance with respect to evidence presented at trial concerning the shotgun's operability. As stated, the operability of the shotgun was not in dispute at trial, as appellant himself testified the gun discharged on the night of the incident and that he told appellant "I shot you." Appellant also testified the shotgun was in working condition prior to this incident, and that he had used the gun less than one month earlier to "shoot pumpkins." Nevertheless, the record indicates appellant's trial counsel fully questioned Officer White regarding the collection of the evidence from the scene and the condition of the shotgun at the time. He also cross-examined Officer Garrison regarding tests performed on the shotgun, as well as his opinion that the shotgun was in working condition as of the date of trial.
 {¶ 50} After a careful review of the record, we find no deficiencies in the performance of appellant's trial counsel. Appellant's fifth assignment of error is therefore overruled.
 {¶ 51} Assignment of Error No. 6:
 {¶ 52} "THE TRIAL COURT ERRED WHEN IT SENTENCED APPELLANT TO MORE THAN A MINIMUM SENTENCE." *Page 15 
 {¶ 53} Finally, appellant challenges his sentence pursuant to the Ohio Supreme Court's decision in State v. Foster, arguing the trial court improperly sentenced him to more than a minimum sentence. We find this argument without merit. Pursuant to Foster, "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences."109 Ohio St.3d 1, 2006-Ohio-856, ¶ 100. Here, appellant was sentenced after the Foster decision was announced, and our review of the record indicates the trial court complied with Foster by sentencing appellant to prison terms within the statutory range without making additional findings of fact. Appellant's sixth assignment of error is therefore overruled. {¶ 54} Judgment affirmed.
BRESSLER, P.J. and WALSH, J., concur.
[1] As used by appellant, "racked" means to pump a round into the shotgun's chamber.
[2] In doing so, the trial court explained appellant "did not commit two separate offenses," but rather, one offense that could have been committed in "two separate ways."
[3] This section provides: "(A) Imposition of a three-year mandatory prison term upon an offender under division (D)(1)(a) of section 2929.14
of the Revised Code is precluded unless the indictment, count in the indictment, or information charging the offense specifies that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense. The specification shall be stated at the end of the body of the indictment, count, or information, and shall be stated in substantially the following form: `SPECIFICATION (or, SPECIFICATION TO THE FIRST COUNT). The Grand Jurors (or insert the person's or the prosecuting attorney's name when appropriate) further find and specify that (set forth that the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense).'"
[4] Our analysis of appellant's argument concerning the gun specification and operability of the subject firearm is set forth in our discussion of appellant's second assignment of error.
[5] Aggravated assault is a lesser included offense of felonious assault, and includes the "additional mitigating element of serious provocation." State v. Deem (1988), 40 Ohio St.3d 205, 210-211. A trial court must instruct the jury on the offense of aggravated assault where the defendant produces sufficient evidence at trial of serious provocation. Id. at 211. "Provocation, to be serious, must be reasonably sufficient to bring on extreme stress and the provocation must be reasonably sufficient to incite or to arouse the defendant into using deadly force. In determining whether the provocation was reasonably sufficient to incite the defendant into using deadly force, the court must consider the emotional and mental state of the defendant and the conditions and circumstances that surrounded him at the time." Id.
[6] "Self-defense presumes intentional, willful use of force to repel force or escape force. Accidental force * * * is exactly the contrary, wholly unintentional and unwillful." State v. Barnd (1993),85 Ohio App.3d 254, 260, quoting State v. Champion (1924), 109 Ohio St. 281,286-287. *Page 1