[Cite as *State v. Toyer*, 2014-Ohio-4338.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

State of Ohio                                                   Court of Appeals No. L-12-1299

     Appellee                                              Trial Court No. CR0201201440

v.

Charles Toyer, Jr.                                         **DECISION AND JUDGMENT**

     Appellant                                            Decided:  September 26, 2014

* * * * *

Julia R. Bates, Lucas County Prosecuting Attorney, and
Evy M. Jarrett, Assistant Prosecuting Attorney, for appellee.

Neil S. McElroy, for appellant.

* * * * *

**PIETRYKOWSKI, J.**

{¶ 1} Defendant-appellant, Charles Toyer, Jr., appeals the September 26, 2012

judgment of the Lucas County Court of Common Pleas which, following a jury trial

convicting him of murder, sentenced him to 15 years to life imprisonment.  For the

reasons that follow, we affirm.

**{¶ 2}** On March 11, 2012, Tiffany Wilborn suffered a stab wound to her chest which resulted in her death. Appellant, Wilborn's boyfriend and father of her infant daughter, was indicted on March 21, 2012, on one count of murder, R.C. 2903.02(B) and 2929.02, and one count of voluntary manslaughter, R.C. 2903.03. Appellant entered not guilty pleas to the charges.

**{¶ 3}** On August 6, 2012, pursuant to Crim.R. 12(D)(1), the state filed a notice of its intent to use evidence of past physical abuse perpetrated by appellant on Wilborn. The state indicated that the eyewitnesses would testify regarding observations of appellant punching and choking Wilborn within the past two years. The state stressed that the evidence would be introduced to show absence of mistake or accident. Opposing the motion, appellant argued that the state had not presented enough detail about the past events and that, on its face, they were too dissimilar. Relevantly, they did not involve the use of a weapon. Thus, under Evid.R. 404(B), they were prejudicial and inadmissible.

**{¶ 4}** On September 17, 2012, prior to the commencement of the jury trial, the state informed the court that it had dismissed the count of involuntary manslaughter and was proceeding on the sole charge of murder. Prior to the evidence portion of the trial, a voir dire was conducted on proposed witness Natiqua Triplett, Wilborn's sister. Triplett testified regarding two prior occasions where she witnessed appellant and Wilborn arguing. First, in January 2011, Triplett heard the two arguing behind a closed bedroom door. After hearing Wilborn say that she could not breathe, Triplett entered the bedroom

2.

and observed Wilborn face down and appellant sitting on top of her with his hands around her neck. Similarly, in the spring of 2011, Triplett observed the pair arguing in multiple rooms of the apartment and ending up in their bedroom. Triplett stated that appellant had Wilborn against the wall and was choking her.

{¶ 5} After much debate, the trial court allowed the testimony as evidence of the turbulent relationship between the parties and to rebut appellant's claim that the stabbing was accidental. Triplett's trial testimony will be discussed in detail below.

{¶ 6} A summary of the testimony presented at trial is as follows. On March 11, 2012, Tiffany Wilborn resided with appellant, her five-year old, and their infant daughter in Toledo, Lucas County, Ohio. On that date, Wilborn and her sister, Natiqua Triplett, with the children, went to a child's birthday party. Wilborn arrived back at the apartment at approximately 7:00 to 7:30 p.m. Appellant arrived home between 10:00 and 11:00 p.m. and the two began arguing about his whereabouts.

{¶ 7} During his interview with police, appellant stated that the two were arguing in the kitchen and that Wilborn had a steak knife, ran outside and threatened to flatten the tires of the vehicle that appellant drove (but was owned and registered to Wilborn). They chased each other around the cars in the back parking lot and wound up back in the kitchen. Appellant stated that he grabbed a knife in order to try and get her to back away. Appellant claimed that he did not know exactly what happened but that Wilborn charged him and he accidentally stabbed her.

3.

{¶ 8} Appellant was questioned by police about why after Wilborn was stabbed, instead of calling 911, he first called a friend. Further, when he did call 911 he told the operator that Wilborn stabbed herself. Appellant stated that he said she stabbed herself because he was afraid of going to jail. He maintained that Wilborn stabbed herself until the police interview.

{¶ 9} The deputy coroner testified regarding her autopsy report which listed that the cause of Wilborn's death as a stab wound to the chest and that the manner of death was homicide. The coroner concluded that a homicide had taken place due to the trajectory or wound path. The wound went through the skin, muscle, the right and left ventricles of the heart and ended approximately one inch from the spine. The coroner surmised that Wilborn would not have plunged into the knife because she would have likely backed away from it or it would have glanced off or been moved out of appellant's hand. The coroner further noted that based on the contemporaneous cuts and bruises on Wilborn's body, she had been involved in an altercation.

{¶ 10} A neighbor testified that on multiple prior occasions she heard arguing at Wilborn's and appellant's apartment and recognized the victim's voice. On the night of the stabbing, she heard the victim yelling "help, he's going to kill me"; she remained inside her home to safeguard her young children. Another neighbor testified that appellant walked up to him and another neighbor and said that the victim stabbed herself.

4.

{¶ 11} Natiqua Triplett presented general background testimony at the beginning of the state's case and later testified regarding the prior acts of domestic violence. Triplett testified that in January 2011, she was spending the night at appellant's and Wilborn's apartment when the two became involved in an altercation. Triplett stated that they went into Wilborn's daughter's room and closed the door. Triplett heard Wilborn tell appellant to get off of her and that she could not breathe. At that point, Triplett entered the room and observed appellant on top of Wilborn who was laying face-down on the floor. He had his arm on her neck. Appellant eventually got up and left the apartment.

{¶ 12} Triplett next testified regarding an incident in the spring of 2011, when the two got into an argument. They argued from the kitchen to the bedroom with appellant pushing her down multiple times on the way. Once in the bedroom, Triplett stated that she saw appellant choking Wilborn up against the wall for "20 seconds" while her face was turning red and her eyes were tearing. Triplett stated that she wanted to tell her father about the incidents she observed but that Wilborn told her not to. During cross-examination she acknowledged that Wilborn neither called 911 nor went to the hospital following the incidents.

{¶ 13} Following Triplett's testimony, the trial court instructed the jury as follows:

> You just heard evidence regarding the commission of other acts by this defendant.

This evidence was received only for a very limited purpose. It was not received and you may not consider it to prove the character of the defendant in order to show that he acted in conformity with the purported character.

If you find that the evidence of these other acts is true and that the defendant actually committed these other acts, you may consider that evidence only for the limited purpose of deciding whether it proves the absence of mistake or accident or as to the defendant's motive regarding the commission of the offense that he is charged with as to this trial.

You may not consider this evidence as to the testimony you just heard for any other purpose.

{¶ 14} Appellant presented evidence from his grandmother, Yolanda Cranon, who testified that Wilborn left her anti-depressant medication at Cranon's home. She also stated that she was not concerned about appellant being violent with Wilborn.

{¶ 15} Regan Burroughs, appellant's long-time friend, testified that she had been in frequent telephone communication with appellant on the date of Wilborn's death. According to Burroughs, appellant wanted her to pick him up because Wilborn was intoxicated and "yelling." Burroughs also stated that she heard Wilborn threaten to slash tires and that appellant stated that she was trying to cut and mace him. Minutes later, appellant called her and said that Wilborn cut herself and was bleeding; he asked Burroughs to call 911. She was not able to because she did not know the street address.

6.

{¶ 16} Burroughs testified that after the stabbing, she went to the apartment to get clothes for the children and some of appellant's belongings. She stated that she observed a Grey Goose vodka bottle on the bed and a container of mace on the floor. Photographs of the items were admitted into evidence. Burroughs admitted that she never told the police what she heard that night.

{¶ 17} Neighbor Patrick Bertin testified that appellant asked Wilborn to leave the house after their argument escalated. She left with the infant but came back, left, and came back again. Eventually, appellant came out of the apartment and, according to Bertin, took the infant out of the car and said: "You're not leaving with my baby." The baby was placed inside and the two came back out and were engaged in a physical altercation. Bertin said that Wilborn was very aggressive and that appellant was trying to get away from her.

{¶ 18} According to Bertin, the two went back into the apartment and the argument got "louder and louder." Bertin stated that he next heard a scream and then someone saying "Oh my God, * * * oh my baby, Tiffany, * * *. Please help, call 911."

{¶ 19} Bertin was cross-examined about his statement to police. He denied saying that Wilborn left but returned because she did not want to leave the newborn with appellant. He also denied failing to mention that Wilborn was the aggressor. Bertin also admitted that he told Wilborn's brother that he wished she had not returned to get her daughter and that appellant looked "possessed" that night.

7.

{¶ 20} Following the close of testimony, the parties engaged in extensive discussions regarding the applicable jury instructions. Appellant's counsel requested that the jury be instructed on accident, reckless homicide, and negligent homicide. After debating the applicable mens rea or lack thereof to warrant the various instructions, as well as the court's finding that the evidence did not support the lesser included offenses, the court instructed the jury on accident as follows:

> The defendant denies that [he] committed an unlawful act and says that the result was accidental.

> An accidental result is one that occurs unintentionally and without any design or purpose to bring it about.

> An accident is a mere physical happening or event out of the usual order of things, and is not reasonably anticipated or foreseen as a natural or probable result of a lawful act.

{¶ 21} Following jury deliberations, appellant was found guilty of murder and sentenced to 15 years to life imprisonment. This appeal followed.

{¶ 22} Appellant now raises two assignments of error for our review:

> Assignment of Error No. 1: The admission of other-acts testimony violated Mr. Toyer's rights to due process and to a fair trial as guaranteed by the Constitutions of the United States and the State of Ohio.

Assignment of Error No. 2: The trial court violated Mr. Toyer's right to a fair trial as guaranteed by the Constitutions of the United States and the State of Ohio by failing to instruct the jury on the lesser-included offense of reckless homicide.

{¶ 23} In appellant's first assignment of error he argues that the trial court erroneously allowed the state to present testimony of prior incidents of domestic violence between appellant and Wilborn because they were neither temporally nor circumstantially related. Evidence of other acts which are wholly independent of the crime charged is generally inadmissible. *State v. Thompson,* 66 Ohio St.2d 496, 497, 422 N.E.2d 855 (1981); Evid.R. 404. Evid.R. 404(A) provides that "[e]vidence of a person's character or a trait of character is not admissible for the purpose of proving action in conformity therewith on a particular occasion * * *."

{¶ 24} As an exception to the strict requirement of Evid.R. 404(A), Evid.R. 404(B) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

Accord R.C. 2945.59.

9.

**{¶ 25}** Accordingly, evidence of other crimes committed by the accused either before or after the crime charged is inadmissible to show a propensity to commit crimes, but may be relevant and admissible to show motive or intent, the absence of mistake or accident, or a scheme, plan or system in committing the act in question. *State v. Broom,* 40 Ohio St.3d 277, 533 N.E.2d 682 (1988), paragraph one of the syllabus. Evidence of an accused's other acts is thus admissible only when it "tends to show" one of the material elements in the charged offense and only when it is relevant to the proof of the accused's guilt for such offense. *State v. Curry,* 43 Ohio St.2d 66, 68–69, 330 N.E.2d 720 (1975). The Ohio Supreme Court has held that in order for the exception set forth in Evid.R. 404(B) to apply, there must be "substantial proof that the alleged other acts were committed by the defendant." (Citations omitted.) *State v. Lowe*, 69 Ohio St.3d 527, 530, 634 N.E.2d 616 (1994).

**{¶ 26}** Generally, Evid.R. 404(B) "affords broad discretion to the trial judge regarding the admission of other acts evidence." *See State v. Williams,* 134 Ohio St.3d 521, 2012-Ohio-5695, 983 N.E.2d 1278, ¶ 17. An appellate court reviews the admission of such evidence for an abuse of such discretion. *State v. Morris*, 132 Ohio St.3d 337, 2012-Ohio-2407, 972 N.E.2d 528.

**{¶ 27}** In support of his arguments, appellant relies on a decision from the Second Appellate District which, in a murder case, addressed the issue of the admissibility of prior instances of domestic violence. *State v. Hawn*, 138 Ohio App.3d 449, 741 N.E.2d 594 (2d Dist.2000). In *Hawn*, the court determined that the acts were inadmissible to

10.

prove identity, as the state espoused, because the issue of identity was not at issue. *Id.* at 463. The court further found that the alleged prior instances, as relayed by the victim to others who observed the corresponding injuries, were neither temporally nor circumstantially related. The murder and the prior incidents were approximately four months apart. *Id.* The court noted that the defendant did not argue that the murder was accidental; rather, that he did not do it at all. Thus, the court further concluded that it was not admissible to show intent or absence of mistake or accident. *Id.* at 463-464.

{¶ 28} Reviewing *Hawn* in light of the facts of the present case we first note that here, unlike *Hawn*, appellant's theory of the case was that the stabbing was accidental. Evid.R. 404(B) specifically provides that other acts evidence may be admissible to show that the crime charged was not accidental. *State v. Ridley*, 6th Dist. Lucas No. L-10-1314, 2013-Ohio-1268, ¶ 36, citing *State v. Grubb*, 111 Ohio App.3d 277, 282, 675 N.E.2d 1353 (2d Dist.1996). *See also State v. Wyatt*, 12th Dist. Butler No. CA2010-07-171, 2011-Ohio-3427, ¶ 11. Further, the prior acts may be admissible to "establish the immediate background for an incident, including the relationship between the parties and any tension that may have existed between them." *In re T.T.*, 6th Dist. Huron No. H-09-030, 2010-Ohio-5649, ¶ 26.

{¶ 29} Additionally, the fact that the instances testified to occurred in January and the spring of 2011 does not automatically prohibit their admission. Courts have allowed such evidence where the incidents occurred "reasonably near to each other." (Citations omitted.) *State v. Vinson*, 9th Dist. Summit No. 23949, 2008-Ohio-2523, ¶ 11

11.

(admissible acts occurred more than ten years prior to the incident.) *See also State v. Stephens*, 9th Dist. Summit No. 23845, 2008-Ohio-890, ¶ 17 (admissible acts were within five years of the incident in question).

{¶ 30} Based on the foregoing, we find that the other acts evidence presented by the state was sufficiently related temporally and circumstantially to be used to rebut appellant's assertion that the stabbing was accidental. Accordingly, the trial court did not abuse its discretion when it permitted such evidence to be used at trial. Appellant's first assignment of error is not well-taken.

{¶ 31} Appellant's second assignment of error argues that the trial court erred when it refused to instruct the jury on the lesser included offense of reckless homicide. Appellant is correct in stating that requested jury instructions should be given if they are a correct statement of the law as applied to the facts in a given case. *Murphy v. Carrollton Mfg. Co.*, 61 Ohio St.3d 585, 591, 575 N.E.2d 828 (1991). A court's instructions to a jury "should be addressed to the actual issues in the case as posited by the evidence and the pleadings." *State v. Guster*, 66 Ohio St.2d 266, 271, 421 N.E.2d 157 (1981). Prejudicial error is found where, in a criminal case, a court refuses to give an instruction that is pertinent to the case, states the law correctly, and is not covered by the general charge. *State v. Sneed*, 63 Ohio St.3d 3, 9, 584 N.E.2d 1160 (1992). We review the trial court's decision to refuse the requested jury instructions for an abuse of discretion. *State v. Wolons*, 44 Ohio St.3d 64, 68, 541 N.E.2d 443 (1989).

12.

**{¶ 32}** First, the parties do not dispute that reckless homicide is a lesser included offense of murder. A murder is committed when an individual purposely causes the death of another. R.C. 2903.02(A). An individual commits reckless homicide when he or she recklessly causes the death of another. R.C. 2903.041(A).

**{¶ 33}** As to a requested jury charge of a lesser included offense, it is required "'only where the evidence presented at trial would reasonably support both an acquittal of the crime charged and a conviction upon the lesser included offense.'" *State v. Trimble*, 122 Ohio St.3d 297, 2009-Ohio-2961, 911 N.E.2d 242, ¶ 192, quoting *State v. Thomas*, 40 Ohio St.3d 213, 533 N.E.2d 286 (1988), paragraph two of the syllabus.

**{¶ 34}** The lesser-included-offense instruction is not warranted every time "some evidence" is presented to support the lesser offense. Rather, a court must find "sufficient evidence" to "'allow a jury to *reasonably* reject the greater offense and find the defendant guilty on a lesser included (or inferior degree) offense.'" (Emphasis sic.) (Internal citations omitted.) *Id.*, quoting *State v. Shane*, 63 Ohio St.3d 630, 632-633, 590 N.E.2d 272 (1992). In determining whether to give the requested instruction, the court must view the evidence in a light most favorable to the defendant. *State v. Braylock*, 6th Dist. Lucas App. No. L-08-1433, 2010-Ohio-4722, ¶ 33, citing *State v. Smith*, 89 Ohio St.3d 323, 331, 731 N.E.2d 645 (2000).

**{¶ 35}** Reviewing appellant's arguments, we are guided by a factually similar case from the Twelfth Appellate District. In *State v. Wyatt*, 12th Dist. Butler No. CA2010-07-171, 2011-Ohio-3427, the defendant was charged with shooting and killing his wife. *Id.*

13.

at ¶ 2. The defendant claimed that the shooting was accidental; other acts of violence against the victim were admitted to show that the shooting was intentional. *Id.* at ¶ 12. The defendant requested that the trial court instruct the jury on the lesser included offense of reckless homicide. The court refused. *Id.* at ¶ 28.

{¶ 36} The appellate court first explained that the claim of accident is an unwilled act lacking criminal culpability. (Citations omitted.) *Id.* at ¶ 31. *See State v. Poole*, 33 Ohio St.2d 18, 294 N.E.2d 888 (1973). The court then noted:

> "Reckless conduct goes beyond what is considered to be an accident." *State v. Easley,* Franklin App. No. 07AP–578, 2008-Ohio-468, ¶ 60. In turn, by claiming the shooting was purely accidental, any argument advanced by appellant claiming culpability for his wife's death, but only to a lesser extent, was wholly inconsistent with his theory of the case. See *id.* (stating "an accident claim is inconsistent with recklessness"); *see, also*, *State v. Cutts,* No.2008CA000079, 2009-Ohio-3563, ¶ 123; *see, generally*, *State v. Rigdon,* Warren App. No. CA2006-05-064, 2007-Ohio-2843, ¶ 46-47. *Id.*

{¶ 37} Appellant contends that some of the interview statements of appellant could have supported a jury charge of reckless homicide. Appellant does not provide us with the statements and in reviewing the interview, we cannot say that appellant's statements, without more, sufficiently supported an instruction on reckless homicide. *See State v. Hubbard*, 10th Dist. Franklin No. 11AP-945, 2013-Ohio-2735, ¶ 41-43.

14.

{¶ 38} Accordingly, we find that the trial court did not abuse its discretion when it refused to instruct the jury on reckless homicide. Appellant's second assignment of error is not well-taken.

{¶ 39} On consideration whereof, we find that appellant was not prejudiced or prevented from having a fair trial and the judgment of the Lucas County Court of Common Pleas is affirmed. Pursuant to App.R. 24, appellant is ordered to pay the costs of this appeal.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                      JUDGE
Stephen A. Yarbrough, P.J.

James D. Jensen, J.               _____
CONCUR.                                           JUDGE

                                           _____
                                                     JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions. Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at: http://www.sconet.state.oh.us/rod/newpdf/?source=6.